## UNITED STATES

### v.

### Senior Airman Eddie L. CHANEY, United States Air Force.

### ACM S29638.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 21 Oct. 1998.

Decided 25 Aug. 1999.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Major Thomas R. Uiselt.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major J. Robert Cantrall.

Before YOUNG, Senior Judge, SPISAK, and SCHLEGEL, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

The appellant pled guilty to, and was convicted of, wrongfully using amphetamine and/or 3, 4-methylenedioxy methamphetamine (ecstasy) on divers occasions. Article 112a, UCMJ, 10 U.S.C. § 912a. The convening authority approved the sentence the court members adjudged—a bad-conduct discharge, confinement for 2 months, forfeiture of $617 pay per month for 2 months, and reduction to E–1. The appellant asserts two errors: (1) The military judge erred in granting trial counsel's peremptory challenge against the only female court member; and (2) The staff judge advocate failed to properly perform his post-trial duties. Finding no prejudicial error, we affirm.

### I. The Peremptory Challenge

#### A. Facts

The trial counsel exercised his peremptory challenge against Captain (Capt) Moore, the sole female member of the assembled court panel. Citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the defense counsel objected. The defense counsel also noted that Capt Moore had been removed from the same panel convened the day before to hear a different case. The military judge inquired as to the reason for the challenge. The trial counsel stated that he was challenging Capt Moore because she was a nurse. The record is silent as to which party challenged Capt Moore in the previous court-martial and whether that challenge was peremptory or for cause.

The military judge accepted the trial counsel's reason for the challenge as "a non-gender specific reason." When the defense counsel suggested that the stated reason could be a pretext, the military judge responded: "I happen to know that—and I'm not agreeing with him—but trial counsels—not these particular trial counsels—as a whole tend to exercise peremptories against med[ical] group folks. But it's specifically nurses, not male or female." The defense did not object to this characterization or ask for further clarification.

#### B. The Law

■ "[G]ender, like race, is an impermissible basis for the exercise of a peremptory challenge by either the prosecution or a military accused." *United States v. Witham*, 47 M.J. 297, 298 (1997) (citing *J.E.B.*; *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); *United States v. Annigoni*, 96 F.3d 1132, 1139 (9th Cir.1996) (en banc)).

■ The Court of Appeals for the Armed Forces has established a special military methodology for examining allegedly discriminatory peremptory challenges.

(1) When a party peremptorily challenges a court member who is a member of a cognizable group (race/gender), the other party must object and state the basis of the objection. *United States v. Moore*, 28 M.J. 366, 368 (C.M.A.1989).

(2) The challenging party then must provide a race/gender neutral reason for the challenge. *Id.*

(3) The military judge "must review the record and weigh trial counsel's credibility before he makes a factual determination regarding the presence or absence of purposeful discrimination in the panel member's rejection." *United States v. Greene*, 36 M.J. 274, 281 (C.M.A.1993) (citing *Hernandez v. New York*, 500 U.S. 352, 364–65, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)). The military judge may not sustain such a challenge if the reason given is "unreasonable, implausible, or ... otherwise makes no sense." *United States v. Tulloch*, 47 M.J. 283, 287 (1997).

(4) Because the military judge's determination of purposeful discrimination is a factual one, largely based on the military judge's evaluation of the counsel's credibility, we accord it great deference. We will overturn the military judge's decision only if it is clearly erroneous. *Greene*, 36 M.J. at 281 (citing *Hernandez*, 500 U.S. at 364–65, 111 S.Ct. 1859; *United States v. Curtis*, 33 M.J. 101, 105 (C.M.A.1991).

#### C. Discussion

Neither the Supreme Court nor the Court of Appeals for the Armed Forces has ruled

definitively on occupation-based peremptory challenges. In *J.E.B.*, the Supreme Court briefly mentioned occupation-based challenges as they might impact on impermissible gender-based challenges. First, the Court noted that peremptory challenges based on occupation are different from those based on race because they "do not reinforce the same stereotypes about the group's competence or predispositions that have been used to prevent them from voting, participating on juries, pursuing their chosen professions, or otherwise contributing to civic life." *J.E.B.*, 511 U.S. at 142 n. 14, 114 S.Ct. 1419. Second, the Court acknowledged that "strikes based on characteristics that are disproportionately associated with one gender could be appropriate, absent a showing of pretext." *Id.* at 143, 114 S.Ct. 1419. The Court used peremptory challenges against all persons who had military experience or were nurses as examples. The former would disproportionately affect men, while the latter would disproportionately affect women. But, the Court concluded that "these challenges may well not be unconstitutional, since they are not gender or race based." *Id.* at 143 n. 16, 114 S.Ct. 1419.

Our superior court has discussed occupation-based peremptory challenges, but only in dictum. In *United States v. Ruiz*, 49 M.J. 340 (1998), the trial counsel challenged the only female member of the panel. The defense counsel cited *J.E.B.* and asked the military judge to require the prosecutor to provide a gender-neutral reason for the challenge. The military judge declined. The following morning, the appellant again raised the issue. The military judge agreed to read the case when the defense counsel could supply it to him, but, with the consent of the defense, elected to "press" on. The issue was never mentioned again. *Ruiz*, 49 M.J. at 342–43. The Court of Appeals for the Armed Forces declined to accept the trial counsel's affidavit explaining his peremptory challenge and remanded the case for a post-trial hearing to make findings of fact and apply the applicable legal standards. *Id.* at 345.

In writing for the three judge majority in *Ruiz*, Chief Judge Cox ignored the Supreme Court's discussion of occupation-based challenges in *J.E.B.* Instead, he opined that "a peremptory challenge based on a juror's occupation has been presumed *by some* to be pretextual on its face." *Ruiz*, 49 M.J. at 344 (emphasis added). Chief Judge Cox suggests that occupation-based challenges should be disfavored in the military because the convening authority has selected the members as "best qualified for the duty by reason of their age, education, training, experience, length of service, and judicial temperament." *Id.* at 345 (quoting Rule for Courts–Martial (R.C.M.) 502(a)(1)).

■ We decline to hold that occupation-based challenges are presumptively pretextual or should be disfavored. There is no reason to apply other than the established military methodology for reviewing claims of discriminatory peremptory challenges. That means the military judge must determine whether the occupation-based challenge is a pretext for discrimination, after reviewing the record, weighing the credibility of the party challenging the court member, and determining if the reason tendered is unreasonable, implausible, or otherwise makes no sense. *Tulloch*, 47 M.J. at 287.

■ In analyzing whether a tendered occupation-based reason for the challenge is unreasonable, implausible, or makes no sense, the military judge must take into consideration the party making the challenge, the facts of the case, and the particular occupation of the challenged court member. In this sentencing case on drug charges, the prosecutor challenged the only woman on the panel because she was a nurse. The military judge did not make findings as required by *Hernandez/Greene*, but did explain that, in his experience, trial counsel, as a group, tend to exercise peremptory challenges against nurses. Our experience has been similar to that of the military judge. Except in cases in which there is a victim who is the object of sympathy, trial counsel tend to challenge nurses from the Court. Rightly or wrongly, prosecutors tend to believe that those who

have dedicated their lives to comforting and caring for the sick and infirm may focus too strongly on the accused as an individual in need of care and comfort. It is the presumed characteristics of the individuals who practice the occupation that prosecutors find objectionable, not their gender. *See J.E.B.*, 511 U.S. at 142 n. 14, 143 n. 16, 114 S.Ct. 1419.

Optimally, the military judge should have had the trial counsel explain his reasoning more fully and then ruled. Nevertheless, it is clear from his comments that he determined that the proffered reason was genuine and not unreasonable, implausible, or without sense. *See United States v. Gray*, 51 M.J. 1, 2 (1999) (finding military judge's conduct amounted to implied ruling "that trial counsel's explanation was genuine and the appellant's *Batson* claim was without merit"). We hold that the military judge's decision to grant the peremptory challenge was not clearly erroneous.

## II. Post–Trial Processing

■ This is yet another case in which defective post-trial processing has resulted in a substantial waste of appellate resources. Post-trial processing of courts-martial has been a matter of some interest to this Court and the Court of Appeals for the Armed Forces for at least 10 years now. *United States v. Craig*, 28 M.J. 321 (C.M.A.1989). Since then, we have written numerous opinions discussing the issue and explaining how best to comply with the dictates of the Rules for Courts–Martial and decisions of our superior court. *See, e.g., United States v. Godreau*, 31 M.J. 809 (A.F.C.M.R.1990) (en banc); *United States v. Foy*, 30 M.J. 664 (A.F.C.M.R.1990) (en banc). The Judge Advocate General's Military Justice Division has sent out how-to guides, and it is rigorously briefed at the course for new staff judge advocates (SJA). Nevertheless, this SJA did not follow that guidance.

After authentication of the record of trial, Lieutenant Colonel (Lt Col) Stephen H. Blewett, the SJA, prepared his recommendation (SJAR) to the convening authority, and it was served on the appellant. In his response, the appellant asserted three trial errors and made a plea for a reduction in the sentence. It appears that Lt Col Blewett did not prepare an addendum to the SJAR and the convening authority did not initial the documents submitted by the defense. Thus, there was no evidence accompanying the record of trial to show that the convening authority had considered the appellant's assertions of error or his clemency submissions.

The appellant now complains that Lt Col Blewett neither advised the convening authority concerning the appellant's allegations of error at trial nor notified him that he had to consider all of the matters appellant submitted in clemency. After examining the affidavits submitted by Lt Col Blewett and his convening authority, we are convinced that the convening authority did in fact consider these matters. The SJA's errors did not prejudice the appellant's substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Because we ultimately found no prejudice, some may ask, "So, what's the big deal?" The big deal is that the SJA's failure to properly process the case forced appellate defense counsel to research and write a brief raising the issue to this Court; the appellate government counsel had to research the issue, seek affidavits from the SJA and the convening authority, and prepare a brief; and we had to expend judicial resources considering the issue. More importantly, this appellant has been left wondering whether the convening authority ever reviewed his submissions before taking action. All of this because the SJA failed to follow well-established and well-publicized procedures. As Chief Judge Cox noted, convening authorities would not accept this type of shoddy staff work from any other officer on his staff, and he should not be expected to accept it from his SJA. *See United States v. Lee*, 50 M.J. 296, 298 (1999). *See also United States v. Coffman*, 50 M.J. 52, 53 (1998) (mem.) (Crawford, J., dissenting) (suggesting The Judge Advocate General track post-trial errors and note who was serving as SJA when the errors occurred).

### III.   Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judge SPISAK and Judge SCHLEGEL concur.